CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
11/03/2026
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| KIMBERLY WOOD,<br>Plaintiff, | ) | |
| v. | ) | Civil Action No. 5:26-cv-00049 |
| CAPITOL ONE, N.A., et al.,<br>Defendants. | ) | By: Elizabeth K. Dillon<br>Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Kimberly Wood (Wood) has filed a civil complaint and moves for leave to proceed in forma pauperis under 28 U.S.C. § 1915(a)(1). The court will grant Wood's motion for leave to proceed in forma pauperis. (Dkt. No. 2.) But, after a sua sponte review of the complaint (Dkt. No. 1) pursuant to 28 U.S.C. § 1915(e)(2), the court will refer Count IV to the United States Bankruptcy Court for the Western District of Virginia and dismiss all other claims. The court will grant Wood leave to file an amended complaint within thirty days. The court also denies Wood's motions for default, default judgment, and to enforce default judgment. (Dkt. Nos. 4, 5, 6.)

I. BACKGROUND

On April 9, 2026, Wood filed a complaint against two defendants: "Capitol [sic] One N.A. d/b/a Capitol [sic] One Auto Finance" (Capital One) and "Safford Winchester LLC d/b/a Safford Chrysler, Jeep, Dodge Ram, Fiat of Winchester" (Safford). (Compl., Dkt. No. 1.) Wood's claims stem from her purchase of a 2021 Dodge Ram 1500 (Dodge Ram) from Safford and financed by Capital One on January 12, 2022. (*Id.* at 7.)[1] Wood asserts seven claims.

[1] When citing the complaint, the court uses the page numbers assigned by CM/ECF rather than paragraph numbers.

In Count I, Wood claims that the Retail Installment Sale Contract (RISC) that she signed when purchasing the Dodge Ram from Safford on January 12, 2022, is "unauthenticated and voidable" for two reasons. First, Wood alleges the seller's signature on the RISC is "an (unidentifiable) 'squiggly line' lacking a printed name or title." (*Id.*) Second, Wood contends that "the Limited Power of Attorney used to record a lien was left unnotarized, and the Buyers Order remains unsigned by a manager[.]" (*Id.*)

In Count II, Wood alleges that defendants included $5,383.00 in Mopar and Auto Armor "service contracts" in the amount financed and did not sign "the underlying contracts for these products." (*Id.*) Wood contends that financing these charges, which she characterizes as "void," constitutes "inaccurate financial disclosures" in violation of the Truth in Lending Act (TILA). (*Id.*)

Count III alleges a Fair Debt Collection Practices Act (FDCPA) violation against Capital One based on a January 27, 2025 Notice of Default (notice of default) provided by Capital One in response to a complaint Wood filed with the Consumer Financial Protection Bureau (CFPB). (*Id.*) Wood contends that the notice was a "false and misleading representation" because her loan with Capital One was current on January 27, 2025, "with $0.00 in late fees." (*Id.*)

In Count IV, Wood claims that Capital One violated a stay ordered while her Chapter 13 bankruptcy case was pending by "assess[ing] fees and restrict[ing] [her] account access" between December 8, 2025, and January 22, 2026. (*Id.* at 7–8.)

Count V alleges that, on November 6, 2023, Capital One repossessed Wood's Dodge Ram "despite [her] verbal objection at the scene . . . . [c]onstituting a Breach of the Peace" under Virginia Code Ann. § 8.9A-609. (*Id.* at 8.) Further, Wood claims that "[d]efendants . . . failed to provide the mandatory 10-day notice of Disposition required by" Virginia Code Ann. § 8.9A-611 prior to repossessing the Dodge Ram. (*Id.*)

Count VI alleges a violation of the Electronic Signatures in Global and National Commerce Act (E-Sign Act) against Safford. (*Id.*) Therein, Wood claims that when she purchased the Dodge Ram, she signed "on a digital pad" and that Safford did not provide "a clear and conspicuous display of the full contract terms on the laptop screen" at the time of the signing. (*Id.*) Further, according to Wood, the final contract that she was provided with, "only on a flash drive after the sale, contained essential blank lines and unauthorized marks that were not visible or disclosed at the time of signing." (*Id.*) Allegedly, Safford did not "obtain 'informed consent' to use electronic records." (*Id.*)

In Count VII, Wood requests a temporary restraining order (TRO) to stop Capital One from repossessing her Dodge Ram. (*Id.* at 9.) Wood contends that the underlying contract is "unauthorized and fraudulent" and that losing her "vehicle will cause irreparable harm to [her] daily life, litigation in court[,] and a medical disabled daughter." (*Id.* at 9.) Wood requests injunctive and declaratory relief as well as compensatory, statutory, and punitive damages. (*Id.* at 9–10.)

In April 2026, Wood filed a motion to proceed in forma pauperis. (Dkt. No. 2.) In May 2026, Wood filed a motion for clerk's entry of default and for default judgment as to both defendants. (Dkt. No. 4.) Wood then filed a motion for default judgment as to both defendants in July 2026, (Dkt. No. 5), and a motion to enforce default judgment and compel the release of the vehicle title as to both defendants in October 2026, (Dkt. No. 6).

## II. REVIEW OF COMPLAINT

The in forma pauperis statute requires this court to sua sponte dismiss a case for several reasons, including where the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B). The same standard that governs motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) applies to sua sponte dismissal

under § 1915(e)(2)(B)(ii). *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003).

Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), the court is limited to considering the sufficiency of the allegations set forth in the complaint and the "documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)); *see also Goines v. Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted) (noting that, when reviewing a motion to dismiss, the court "consider[s] documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits").

In conducting its review, the court must liberally construe Wood's pro se pleading. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Even with a liberal construction, the complaint suffers from several flaws and, apart from Count IV, which the court will refer to the U.S. Bankruptcy Court for the Western District of Virginia, fails to state a claim.

**A. Count I**

In Count I, Wood contends that the RISC is voidable for two reasons: (1) because the signature of the Safford representative is illegible and his or her name and title is not printed underneath; and (2) the Limited Power of Attorney was not notarized and the Buyers Order was not signed by a Safford representative. (Compl. 7.) As an initial matter, Wood does not allege how any deficiency in the Limited Power of Attorney or Buyers Order would affect the validity of the RISC.

Further, the court is unaware of any legal authority that supports Wood's contention that an illegible signature on a contract renders said contract "unauthenticated" and thus void or voidable. Indeed, even an unsigned contract may still be enforceable. *See, e.g.* Va. Code Ann. §

8.01-246 (proscribing different statutes of limitations for claims based on signed versus unsigned contracts); *Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.*, 732 S.E.2d 383, 460 (Va. 2012) (quoting *Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955)) ("[A]n unsigned agreement all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract.") Accordingly, Count I does not plead a cognizable claim.

**B. Count II**

Count II alleges a violation of the TILA based on Safford's inclusion of the Mopar and Auto Armor service contracts in the amount to be financed under the RISC and Safford's failure to sign the service contracts. (Compl. 7.) "Congress passed the TILA 'to assure [a] meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him.'" *Hicks v. Star Imps., Inc.*, 5 F. App'x 222, 224 (4th Cir. 2001) (quoting 15 U.S.C. § 1605(a)). Thus, a prerequisite to a TILA claim is that there was no meaningful disclosure of a term required to be disclosed. Wood does not allege any such nondisclosure, nor could she. Both the Mopar and Auto Armor service contracts are conspicuously listed on the RISC. (Dkt. No. 1-7.) Accordingly, Count II fails to state a claim upon which relief can be granted.

**C. Count III**

In Count III, Wood alleges an FDCPA violation against Capital One based on the notice of default that Capital One provided in its response to Wood's CFPB complaint. (Compl. 7.) According to Wood, the notice of default was fraudulent because her loan with Capital One was current at the time. (*Id.*)

To recover under the FDCPA, a plaintiff must establish "(1) that she has been the object of collection activity arising from consumer debt, (2) that the defendant is a debt collector, as defined under the FDCPA, and (3) that the defendant has engaged in a prohibited act or

omission." *Shelton v. Marshall*, 724 F. Supp. 3d 532, 541 (W.D. Va. 2024) (citation omitted). Critical, the FDCPA "generally does not regulate creditors when they collect debt on their own account." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 134 (4th Cir. 2016). Rather, "[w]ith limited exceptions," the FDCPA only regulates debt collectors "collect[ing] debt on behalf of a creditor." *Id.* at 135. "A creditor, on the other hand, is a person to whom the debt is owed, and when a creditor collects its debt for its own account, it is not generally acting as a debt collector." *Id.* 135–36.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Generally, debt collectors include "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* "Stated more simply, this provision defines a debt collector as (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another*; or (3) a person who collects *its own debts*, using *a name other than its own* as if it were a debt collector." *Henson*, 817 F.3d at 136.

Here, Wood has not pled facts establishing that Capital One is a debt collector rather than merely a creditor. And exhibits submitted by Wood contradict any claim that Capital One is a debt collector within the meaning of the FDCPA. Instead of showing Capital One acting as a debt collector, the addendum to the RISC lists Capital One as the lienholder (Dkt. No. 1-13), the statement shows that Wood made payments directly to Capital One (Dkt. No. 1-6), and the allegedly fraudulent notice of default came directly from Capital One and references the same account number as is listed on the account statement (Dkt. No. 1-4). Accordingly, it is apparent

that Capital One is not a debt collector within the meaning of the FDCPA. Count III thus fails to state a claim.

**D. Count IV**

Count IV alleges that, by "assess[ing] fees and restrict[ing] . . . account access," Capital One violated a stay ordered while Wood's Chapter 13 bankruptcy case was pending between December 8, 2025, and January 22, 2026. (Compl. 7–8.) "[T]he filing of a bankruptcy petition operates immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 480 (4th Cir. 2015) (citing 11 U.S.C. § 362(a)). A creditor who willfully violates such a stay may be held liable for "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "A claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11, and as such, [the court] has jurisdiction over it." *Houck*, 791 F.3d at 481.

Even though the court has jurisdiction over Count IV, a § 362(k) claim may be referred to the bankruptcy court. *Id.* (citing 11 U.S.C. § 157(a)). Indeed, by Local Rule 3(a), the United States District Court for the Western District of Virginia has referred "all cases under Title 11 of the United States Code and all proceedings under Title 11, or arising in or relating to a case under Title 11, . . . to the bankruptcy judges for this district[.]" W.D. Va. Gen. R. 3(a). Because, as explained *supra* and *infra*, Count IV is the only claim remaining, "[a]llowing the bankruptcy court to address th[is] bankruptcy-related claim[] in the first instance promotes judicial economy and the uniform administration of bankruptcy proceedings." *Harlow v. Wells Fargo & Co.*, 608 F. Supp. 3d 377, 388 (W.D. Va. 2022). Accordingly, the court will refer Count IV to the United States Bankruptcy Court for the Western District of Virginia.

**E. Count V**

In Count V, Wood alleges that Capital One violated two provisions of Article 9 of the Virginia U.C.C. when it repossessed her Dodge Ram on November 6, 2023. (Compl. 8.) First, Wood contends that Capital One violated Virginia Code § 8.9A-609(b)(2), which allows a creditor to take possession of collateral after default "without judicial process, if [the repossession] proceeds without breach of the peace." According to Wood, Capital One violated this provision by repossessing her Dodge Ram "despite [her] verbal objection at the scene." (*Id.*) Second, Wood alleges that Capital One violated Virginia Code § 8.9A-611, which sets forth what notice must be given before a [creditor] may dispose of collateral after default, by failing to provide her with "the mandatory 10-day notice of Disposition." (*Id.*)

Although a statute of limitations is generally an affirmative defense, the court may consider a statute of limitations defense sua sponte when reviewing a complaint filed in forma pauperis provided that "such a defense plainly appears on the face of" the complaint. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (citing *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 953–54 (4th Cir. 1995)). "[T]his deviation from the general rule—that a statute of limitations defense is waived if not timely raised by the defendant—is justified," in part, because of the court's "unusual duty of independently screening initial [in forma pauperis] filings, and dismissing those actions that plainly lack merit." *Id.* at 655–56.

Article 2 of Virginia's version of the U.C.C. provides a four-year general-purpose statute of limitations for actions "for breach of contract for sale," including actions for breach of warranty. Va. Code Ann. § 8.2-725; *see also Piper v. Ford Motor Co.*, 705 F. Supp. 3d 575, 579 (E.D. Va. 2023). But Wood's claim is that Capital One violated Article 9's repossession and notice of disposition requirements. And Article 9 of Virginia's U.C.C., Va. Code Ann. §§ 8.9A-601 *et seq.*, does not contain a specific time limitation for bringing an action for liability.

Accordingly, the "catch-all" two-year statute of limitations applies. *Leggatt v. Equifax Info. Servs., Inc.*, No. 3:09-cv-263, 2009 WL 2432371, at *2–3 (E.D. Va. Aug. 6, 2009); Va. Code Ann. § 8.01-248 ("Every personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued."). The limitations period on Wood's Article 9 claims, therefore, ran on November 6, 2025. Because Wood did not file the instant complaint until April 9, 2026, her claims in Count V are time-barred.

**F. Count VI**

Count VI alleges a violation of the E-Sign Act, 15 U.S.C. §§ 7001–06. (Compl. 8.) In general, the E-Sign Act establishes the validity and legal effect of electronic signatures:

> (a) In general
>
> Notwithstanding any statute, regulation, or other rule of law (other than this subchapter and subchapter II), with respect to any transaction in or affecting interstate or foreign commerce—
>
> (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
>
> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a).

Wood does not cite any authority that allows for a private right of action under the E-Sign Act, and the court cannot find any such authority. Rather, courts reaching the issue have concluded that there is no private right of action under the E-Sign Act. *See, e.g.*, *Levy-Tatum v. Navient & Sallie Mae Bank*, Civil Action No. 15-3794, 2016 WL 75231, at *5–*6 (E.D. Pa. Jan. 7, 2016) (concluding "that the E-Sign Act does not create a private right or remedy, either expressly or by implication"); *Stephens v. Bank of Am. Home Loans, Inc.*, No. 5:16-CV-660-BR,

2017 WL 4322816, at *4 (E.D.N.C. Sept. 28, 2017) (finding the analysis in *Levy-Tatum*, 2016 WL 75231, persuasive and concluding that "the E-Sign Act does not create a private right or remedy"); *Williams v. Wells Fargo Auto*, No. 25 CV 13468, 2026 WL 1214697, at *2 (N.D. Ill. May 4, 2026) (concluding that the E-Sign Act does not "create a private right of action under which [a] plaintiff can recover damages"). Accordingly, Count VI does not state a claim.

**G. Count VII**

In Count VII, Wood asks the court to grant a temporary restraining order (TRO) against Capital One prohibiting it from repossessing the Dodge Ram "[b]ecause the underlying contract is unauthorized and [f]raudulent." (Compl. 9.) The court treats this count as a motion for a TRO.

A TRO under Federal Rule of Civil Procedure 65 is an "extraordinary remedy" that should be granted sparingly and only "in . . . limited circumstances." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991) (citation omitted). Preliminary injunctive relief, such as a TRO, may only be granted "upon a clear showing that the plaintiff is entitled to relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (cleaned up). As discussed *infra*, Wood has failed to state a claim for relief based on the RISC between her and Capital One. Because she cannot show a likelihood of success on the merits or an entitlement to relief, the court will deny Wood's motion for a TRO.

**H. Motions for Default**

Wood has also filed a motion for clerk's entry of default and for default judgment (Dkt. No. 4), a motion for default judgment (Dkt. No. 5), and a motion to enforce default judgment and compel the release of the vehicle title (Dkt. No. 6). In those motions, Wood argues that Safford and Capital One's failure to respond to her complaint means that default judgment should be entered against them. She is wrong.

The court has not ordered service on either Safford or Capital One, so neither defendant

has yet been served. Without proper service of process, a default judgment cannot be granted. *Banilla Games, Inc. v. Guangzhou Yingfeng Tech. Co.*, No. 3:23-cv-00182, 2023 WL 7413327, at *2 (E.D. Va. Nov. 9, 2023) (citations omitted) (noting that service of process upon a party is "a prerequisite to a court granting default judgment"). Because they have not been served, defendants have not "failed to plead or otherwise defend," Fed. R. Civ. P. 55(a), and neither an entry of default nor a default judgment against them is appropriate.

## III. SUMMARY AND ORDER

For the reasons above, the court ORDERS as follows:

1. Wood's motion to proceed in forma pauperis (Dkt. No. 2) is GRANTED;
2. Wood's motion for clerk's entry of default and default judgment (Dkt. No. 4) is DENIED;
3. Wood's motion for default judgment (Dkt. No. 5) is DENIED;
4. Wood's motion to enforce default judgment and compel the release of vehicle title (Dkt. No. 6) is DENIED;
5. Count IV is REFERRED to the United States Bankruptcy Court for the Western District of Virginia for consideration of that claim in the first instance;
6. Counts I, II, III, V, and VI are DISMISSED WITH PREJUDICE;
7. Count VII, which the court construes as a motion for a TRO, is DENIED; and
8. The Clerk is DIRECTED to ADMINISTRATIVELY CLOSE this case.

The Clerk is DIRECTED to provide a copy of this opinion and order to Wood.

Entered: November 3, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge